**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re<br><br>CELINA SNELL<br><br>Debtor. | Chapter: 13<br>Case No.: 15-21292<br><br>June 2, 2016 |

**MEMORANDUM OF LAW RE:**
**FEE ONLY AND MINIMAL DISTRIBUTION CHAPTER 13 CASES**

CELINA SNELL, Debtor

David Lavery (ct29971)
Beckett Law, LLC
543 Prospect Avenue
Hartford, CT   06105
T: 860-236-1111
F: 860-236-0050
DavidL@beckett-law.com

## TABLE OF CONTENTS

BACKGROUND ……………………………………………………………………………..1

ARGUMENT ………………………………………………………………………………….2

I.    The Debtor has no general unsecured creditors, and, as a result, the plan cannot be proposed in bad faith as to those creditors ……………………………………………….2

II.    'Fee only' Chapter 13 plans where the debtor's plan payments primarily go to the payment of counsel fees, are not per se bad faith but rather are reviewed under the totality of the circumstances under 11 U.S.C. § 1325(a)(3) ……………………………..2

CONCLUSION ……………………………………………………………………………..6

## TABLE OF AUTHORITIES

**Cases**

In re Allen, 300 B.R. 105 (Bankr. D.D.C. 2003) ……………………………………………..4

Barnes v. Whelan (In re Barnes), 689 F.2d 193 (D.C. Cir. 1982) ………………………………..3

In re Brown, 742 F.3d 1309 (11th Cir. 2014) …………………………………………………….4

Connelly v. Bath Nat'l Bank, No. 93-CV-6449, 1995 WL 822677 (W.D.N.Y.
    Apr. 13, 1995) ……………………………………………………………………..…………3

In re Crager, 691 F.3d 671 (5th Cir. 2012) …………………………………………………….4

Finizie v. City of Bridgeport (In re Finizie), 184 B.R. 415 (Bankr. D. Conn. 1995) ……….3, 5, 6

Flygare v. Boulden, 709 F.2d 1344 (10th Cir. 1983) …………………………………………….4, 5

In re Glenn, 288 B.R. 516 (Bankr. E.D. Tenn. 2002) …………………………………………….3

Goeb v. Heid (In re Goeb), 675 F.2d 1386 (9th Cir. 1982) ………………………………………3

Hamilton v. Lanning, 560 U.S. 505 (2010) ……………………………………………………..3

Johnson v. Vanguard Holding Corp. (In re Johnson), 708 F.2d 865 (2d Cir. 1983) ……………..3

In re Paley, 390 B.R. 53 (Bankr. N.D.N.Y. 2008) ……………………………………………….3

Plagakis v. Gelberg (In re Plagakis), No. 03-CV-0728, 2004 WL 203090 (E.D.N.Y. Jan.
    27, 2004) …………………………………………………………………………………….3

In re Pruitt, 401 B.R. 543 (Bankr. D. Conn. 2009) ……………………………………………….5

In re Puffer, 674 F.3d 78 (1st Cir. 2012) …………………………………………………..3, 4

In re Myers, 491 F.3d 120 (3d Cir. 2007) ……………………………………………………….3

Neufeld v. Freeman, 794 F.2d 149 (4th Cir. 1986) ……………………………………………….3

Document Page 4 of 11

Tennessee Commerce Bank v. Hutchins, 409 B.R. 680 (D. Vt. 2009) …………………………..3

In re Yavarkovsky, 23 B.R. 756 (S.D.N.Y. 1982) …………………………………………………..3


**Statutes**

11 U.S.C. § 502  …………………………………………………………………………………….1

11 U.S.C. § 506  …………………………………………………………………………………..1, 2

11 U.S.C. § 1325  ………………………………………………………………………….*passim*


**Articles**

Alexander F. Clamon, Comment, Per Se *Bad Faith? An Empirical Analysis of Good
    Faith in Chapter 13 Fee-Only Plans*, 30(2) Emory Bankr. Developments J.
    (Spring 2014)  ……………………………………………………………………………….3

Brandon L. Johnson, Comment, *Good Faith and Disposable Income: Should the Good
    Faith Inquiry Evaluate the Proposed Amount of Repayment?*, 36 Gonz. L. Rev.
    375 (2001)  ……………………………………………………………………………….3

## BACKGROUND

1.      This brief is being filed in support of Celina Snell's (the "Debtor") proposed Chapter 13 plan in order to address the Court's concerns about the appropriateness of 'fee only' and minimal distribution plans. As the Court referenced at the hearing held on May 23, 2016, there is a sparse judicial record in Connecticut of confirmation decisions for these types of plans. Further, many of the cases decided in Connecticut were prior to the 1984 amendments to the Bankruptcy Code. The 1984 amendments supplanted some of the typical factors that courts had previously reviewed in deciding whether to confirm a plan, including the amount of the debtor's income that was devoted to the plan.

2.      In this case, the Debtor has proposed a plan that will pay 0% to her general unsecured creditors as well as cure a small mortgage shortfall over 36 months. The Debtor previously filed for relief under Chapter 7 on July 30, 2010 and received a discharge on November 10, 2010. The Debtor is not presently eligible for a discharge under Chapter 7.

3.      No unsecured claims were filed before the claims bar date.[1] The Debtor has no non-exempt assets. See Sched. A/B & C. The Debtor has gross annual income of $31,903.20, roughly half the median income for an individual residing in Connecticut. See Sched. I. The Debtor proposed to pay all of her disposable income into her plan. If the Debtor's assets were liquidated, her general unsecured creditors would receive nothing.

---

[1] On Schedule F, the Debtor listed general unsecured creditors with a total outstanding balance of $2,257.65, but none of the creditors listed filed claims. In order to receive a distribution, creditors must file claims.

## ARGUMENT

**I.  The Debtor has no general unsecured creditors, and, as a result, the plan was not filed in bad faith.**

4. The Debtor has no general unsecured creditors eligible to participate in a distribution, so there are no creditors who will be prejudiced by her proposed plan.

5. The only creditors who will have unsecured claims at the time of plan confirmation are those creditors whose liens are avoided in accordance with the Debtor's application pursuant to 11 U.S.C. § 506(a). However, as a result of the Debtor's prior Chapter 7 discharge, she already has no personal liability for those claims. Under 11 U.S.C. § 502(b)(1), the claims are unenforceable against the Debtor. Put another way, the creditors who have claims that will be deemed unsecured have loans that are essentially 'non-recourse' or unrecoverable as against the Debtor personally because of her prior discharge.

6. Moreover, in a liquidation unsecured creditors would receive no distribution. Finally, the Debtor had an actual need for Chapter 13 as opposed to Chapter 7. Specifically, 11 U.S.C. § 506(a) is only available to avoid unsecured consensual liens in a Chapter 13 case.

**II.  'Fee only' Chapter 13 plans where the debtor's plan payments primarily go to the payment of counsel fees, are not *per se* bad faith but rather are reviewed under the totality of the circumstances under 11 U.S.C. § 1325(a)(3).**

7. 'Fee only' cases are Chapter 13 cases where the primary debt that is paid through the plan is the debtor's counsel fee. This Chapter 13 case is not strictly a 'fee only' case because the Debtor filed a motion to avoid several wholly unsecured liens. That motion would not have been available in a Chapter 7 proceeding.

8. Prior to 1984, the majority of litigation over plan confirmation involved a debtor's disposable income, but those issues were displaced by the enactment of 11 U.S.C. § 1325(b).

See, e.g., Alexander F. Clamon, Comment, Per Se *Bad Faith? An Empirical Analysis of Good Faith in Chapter 13 Fee-Only Plans*, 30 Emory Bankr. Developments J. 2 (Spring 2014). In his detailed research, Mr. Clamon noted the following:

> Today, all but two of the federal circuit courts have expressly adopted the "totality of the circumstances" test as their standard.[2] While not specifically addressing the issue, the Supreme Court implicitly approved the test by citing lower court cases that applied it.[3] The two federal circuits that have not expressly adopted the test—the Second Circuit and the District of Columbia Circuit—have used a subjective, case-by-case determination and cited other circuit precedent approvingly.[4] All of the lower courts in both circuits have also adopted the test, either expressly or implicitly.[5]

The First, Fifth, and Eleventh Circuits have considered fee-only plans within the last four years.

9.      In In re Brown, the Eleventh Circuit held that the plan was not proposed in good faith because the debtor "sought relief under chapter 13, not to adjust debts and preserve assets, but to accommodate payment of attorney fees." 742 F.3d 1309 (11th Cir. 2014). The court

---

[2] See Berliner v. Pappalardo (In re Puffer), 674 F.3d 78, 82 (1st Cir. 2012); Brandon L. Johnson, Comment, *Good Faith and Disposable Income: Should the Good Faith Inquiry Evaluate the Proposed Amount of Repayment?*, 36 Gonz. L. Rev. 375, 379 & n.26 (2001) (noting that the "totality of the circumstances" approach is used in the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits).

[3] Hamilton v. Lanning, 560 U.S. 505, 522–23 (2010) (citing In re Myers, 491 F.3d 120, 125 (3d Cir. 2007); Neufeld v. Freeman, 794 F.2d 149, 153 (4th Cir. 1986); In re Glenn, 288 B.R. 516, 520 (Bankr. E.D. Tenn. 2002)).

[4] See Johnson v. Vanguard Holding Corp. (In re Johnson), 708 F.2d 865, 868 (2d Cir. 1983) (citations omitted) (holding that the good faith standard requires the debtor's honesty, and focuses on his "conduct in the submission, approval, and implementation of a [c]hapter 13 bankruptcy plan"); Barnes v. Whelan (In re Barnes), 689 F.2d 193, 198–200 (D.C. Cir. 1982) (finding good faith requires an "honesty of intention"); Goeb v. Heid (In re Goeb), 675 F.2d 1386, 1390 (9th Cir. 1982) (holding that "whether the debtor has misrepresented facts in his plan, unfairly manipulated the [Code], or otherwise proposed his [c]hapter 13 plan in an inequitable manner").

[5] See Tennessee Commerce Bank v. Hutchins, 409 B.R. 680, 683 (D. Vt. 2009); Plagakis v. Gelberg (In re Plagakis), No. 03-CV-0728, 2004 WL 203090, at *4 (E.D.N.Y. Jan. 27, 2004); Connelly v. Bath Nat'l Bank, No. 93-CV-6449, 1995 WL 822677, at *3 (W.D.N.Y. Apr. 13, 1995); In re Paley, 390 B.R. 53, 57–58 (Bankr. N.D.N.Y. 2008); Finizie v. City of Bridgeport (In re Finizie), 184 B.R. 415, 419 (Bankr. D. Conn. 1995); In re Yavarkovsky, 23 B.R. 756, 759 (S.D.N.Y. 1982) (finding a similar, if not largely the same, standard for good faith that "contemplates a broad judicial inquiry into the conduct and state of mind of the debtor" and considers "all aspects of fair dealing . . . the lawfulness of the debtor's conduct . . . good faith in dealing with creditors and their claims"); In re Allen, 300 B.R. 105, 123 (Bankr. D.D.C. 2003).

applied the totality of the circumstances test. There, the debtor only had social security income with minimal assets and no real property. The debtor proposed to pay an attorney fee of $5,400 and $2,806 to his unsecured creditors.

    10.    This case is distinguishable from Brown. Here, the Debtor had a specific need for Chapter 13: the ability to avoid wholly unsecured liens. The foreclosure of mortgages in Connecticut has no statute of limitations. Eventually, as the Debtor paid down her first-position mortgage and the property appreciated, junior liens would have attached to equity and foreclosure would have been available to the lienors.

    11.    In In re Crager, the Fifth Circuit also applied the totality of the circumstances test. 691 F.3d 671 (5th Cir. 2012). However, it reached a different conclusion on substantially similar facts, focusing on the debtor's concerns about her rising medical costs and her credibility as a witness when it concluded that the debtor had made a responsible decision to file under Chapter 13.

    12.    In In re Puffer, the First Circuit declined to impose a rule that fee-only cases are filed in bad faith *per se* but remanded for a determination under the totality of the circumstances test. 674 F.3d 78 (1st Cir. 2012). Finally, in Flygare v. Boulden, in affirming the totality of the circumstances test, the court noted that the percentage of payment to unsecured creditors is only one important factor, among many others, that should be analyzed by the court. 709 F.2d 1344 (10th Cir. 1983).

    13.    The factors generally used include:

        i.    the amount of the proposed payments and the amount of the debtor's surplus;

        ii.    the debtor's employment history, ability to earn and likelihood of future increases in income;

  iii. the probable or expected duration of the plan;

  iv. the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

  v. the extent of preferential treatment between classes of creditors;

  vi. the extent to which secured claims are modified;

  vii. the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;

  viii. the existence of special circumstances such as inordinate medical expenses;

  ix. the frequency with which the debtor has sought relief under the [Bankruptcy Code];

  x. the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

  xi. the burden which the plan's administration would place upon the trustee.

Flygare, 709 F.2d at 1347-48.

14. 'Fee only' cases are not *per se* impermissible. Rather, the court should look to the totality of the circumstances, including the proposed payout to general unsecured creditors as well as the debtor's need to utilize certain provision of Chapter 13 not present in other chapters. The totality of the circumstances test was adopted in the leading case from Connecticut interpreting 11 U.S.C. § 1325(a)(3), Finizie v. City of Bridgeport (In re Finizie), 184 B.R. 415, 419 (Bankr. D. Conn. 1995).[6]

15. In Finizie, in holding that the plan was proposed in bad faith, the Bankruptcy Court focused on the following facts: (1) the debtor's primary debt, her property taxes, had been

---

[6] The undersigned was unable to find any Connecticut case with any extended discussion of 11 U.S.C. § 1325(a)(3). The last case after Finizie to reference the section was In re Pruitt, 401 B.R. 543 (Bankr. D. Conn. 2009), and there, it was only in footnote 22 where the Bankruptcy Court stated that "[d]espite the theoretical possibility of this debtor strategy, it is important to note that any debtor agenda in Chapter 13 must be pursued in good faith. See, e.g., 11 U.S.C. § 1325(a)(3)."

delinquent for 19 years, (2) the taxes had been in litigation for 11 years, (3) it was the debtor's third serial filing without a proposing viable plan to cure the delinquency, (4) the bankruptcy filings all occurred on the eve of foreclosure, and (5) the state court was in the best position to issue a final determination as to the claims of the city tax collector and the defenses of the debtor. Finizie, 184 B.R. at 419.

16.     Here, the Debtor is not retaining any surplus income for herself. She has been employed in the same position as a nursing assistant for 27 years and is unlikely to receive future raises beyond cost of living adjustments. No written objections to the petition or plan have been filed. There is no preferential treatment between classes of creditors or modification of claims. The Debtor is not seeking to retain luxury items at the expense of other creditors or to avoid repaying creditors who have filed claims. Finally, the Debtor did not file this case on the eve of a foreclosure or after running about a large amount of unsecured debt. Rather, as evidenced by her petition, she has followed a fiscally responsible path since her prior bankruptcy case.

## CONCLUSION

17.     Under the totality of the circumstances present in this case, the plan was not proposed in bad faith. The Debtor had a legitimate need to utilize Bankruptcy Code provisions only available in Chapter 13 to avoid unsecured liens. Furthermore, she is not presently eligible for a Chapter 7 discharge. Finally, there are presently no recoverable unsecured claims that have been filed.

Dated:   June 2, 2016                                             /s/ David Lavery
                                                                  David Lavery (ct29971)

## CERTIFICATE OF SERVICE

      I hereby certify that on June 2, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                            /s/ David Lavery